FILED
Clerk
District Court
OCT 30 2026
for the Northern Mariana Islands
By ________________ (Deputy Clerk)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN MARIANA ISLANDS**

| | |
|---|---|
| ALICE U. HOFSCHNEIDER,<br><br>Plaintiff,<br><br>v.<br><br>KEITH NABORS,<br>CLARINDA NGIRAUSUI, and<br>ESTHER LIZAMA MUNA,<br><br>Defendants. | Case No. 1:26-cv-00018<br><br>**SCREENING ORDER** |

Before the Court are Plaintiff Alice U. Hofschneider's Application to Proceed in District Court Without Prepaying Fees or Costs (the "Application," ECF No. 1) and Complaint (ECF No. 2), both filed on August 14, 2026. For the reasons set forth below, the Court GRANTS Hofschneider's Application to proceed *in forma pauperis*. The Court, however, finds that Hofschneider's Complaint fails to state a claim upon which relief may be granted and accordingly DISMISSES Hofschneider's Complaint with leave for her to amend.

## I. APPLICATION TO PROCEED *IN FORMA PAUPERIS*

Hofschneider's Application is supported by her affidavit and financial information. (*See generally* Appl., ECF No. 1.) Based on her representations concerning her indigent status, the Court finds Hofschneider's Application well taken and therefore grants her Application.

## II. BACKGROUND

Hofschneider's Complaint consists of the five-page form complaint for *pro se* plaintiffs (ECF No. 2) and three pages of typed allegations (ECF No. 2-1). Therein, Hofschneider alleges the following facts:

(1) Hofschneider was employed as a Patient Access Supervisor at the Lucia Chiang Villagomez Arizapa Health Center (LCVAHC) from September 22, 2025, to January 10, 2026. (ECF No. 2-1, at 1.) Prior to working as a Patient Access Supervisor, Hofschneider worked as a Patient Access Registrar III at the Commonwealth Healthcare Corporation (CHCC) since 2014 and as a Medical Records Specialist at LCVAHC (then known as the Tinian Health Center) from 1996 to 2013. (*Id.*) Hofschneider holds an Associate of Arts – Medical Assistant degree from Mount Hood Community College in Oregon. (*Id.*)

(2) Hofschneider's main responsibilities as a Patient Access Supervisor "were to oversee the front office which handled patient registration, medical records, billing, and cashier." (*Id.*) In addition, Hofschneider supervised two employees, "ISN" and "NH." (*Id.*)

(3) On September 22, 2025, her first day of work as a Patient Access Supervisor, Hofschneider found the front office "very unsanitary" and "cleaned it out" with the assistance of another employee. (*Id.* (noting the front office was dusty, had ants on the counter and spilled foodstuffs, and that the "records area" had a mattress and pillow).) ISN was not in the office. (*Id.*)

(4) The following day, Hofschneider held a meeting with ISN and NH, where she informed them that the front office must be kept clean and no one but front office staff is allowed to access the area given the healthcare nature of the facility and the requirements of the Health Insurance Portability and Accountability Act (HIPAA) of 1996. (*Id.*)

(5) On September 29, 2025, Hofschneider claims she was bullied by ISN when, while eating lunch with other staff in the staff lunch room, ISN entered the room and "sarcastic[ally]" stated that she was going "save [her] food because [she was] picking up [her] children [at] 2:30 p.m." (*Id.* at 2.) ISN further stated that "someone is not allowing [her] to bring [her] children [to] the clinic," so her children would be staying in LCVAHC Director Keith Nabors's office. (*Id.*) Hofschneider "informed" Director Nabors about ISN's remarks; however, Director Nabors "never brought" Hofschneider and ISN "in to address it." (*Id.*)

(6) On October 21, 2025, Hofschneider asked ISN "to organize the billing files before she went on leave." (*Id.*) In response, ISN shouted at Hofschneider. (*Id.* (representing that Hofschneider "did not know that [ISN] was going straight from her personal leave to maternity leave").)

(7) Two days later, Director Nabors held a meeting with Hofschneider, ISN, and another employee regarding the October 21, 2025, incident. (*Id.*)

(8) On November 6, 2025, Clarinda Ngirausui, CHCC's Human Resources ("HR") Director, arrived at Tinian from Saipan and interviewed Hofschneider regarding the October 21, 2025, incident. (*Id.*) ISN was not in the office. (*Id.*) Hofschneider also informed Director Ngirausui of ISN's conduct on September 29, 2025, to which Director Ngirausui said that "she will look into it." (*Id.*) Hofschneider began experiencing rashes breaking out on her arms and the side of her mouth "shortly after." (*Id.*) CHCC HR ultimately "never held a meeting regarding the outcome" of the investigation into the October 21, 2025, incident. (*Id.*)

(9) Later that same month, CHCC Chief Executive Officer Esther L. Muna, along with "other members of the leadership," visited Tinian for Thanksgiving lunch. (*Id.*) Hofschneider

had a brief meeting with CHCC Chief Financial Officer Perlie Santos, at which CFO Santos "mentioned that she saw that collections were going up." (*Id.*)

(10) On December 22, 2025, Hofschneider had a meeting with Director Nabors concerning her "Probationary Evaluation," at which Director Nabors rated her poorly "in almost all items" and further told her that she was "computer illiterate." (*Id.*) This poor rating was the first in Hofschneider's over twenty years of employment at CHCC. (*Id.* at 3.)

(11) The following day, Hofschneider flew to Saipan and met with HR Director Ngirausui, whereupon Hofschneider "was given an extension until January 10, 2026[,] for CEO Muna's review." (*Id.*) When Hofschneider inquired once more about the status of her "complaint" concerning ISN's conduct on September 29, 2025, Director Ngirausui stated that she "was forwarding it to the staff who handles these matters[.]" (*Id.*) Hofschneider "never heard from anyone" regarding her complaint. (*Id.*)

(12) On January 9, 2026, Hofschneider "brought the matter" to Corinne H. Santos, the member of CHCC's board of trustees representing Tinian. (*Id.*) Trustee Santos indicated that she would forward Hofschneider's "appeal" to Juan Babauta, the chairman of CHCC's board of trustees, because Trustee Santos is Hofschneider's sister. (*Id.*) Trustee Santos further indicated that she would "ask for a month extension to look into the matter." (*Id.*)

(13) On January 10, 2026, Hofschneider received by email her notice of separation, signed by CEO Muna. (*Id.*) Hofschneider appears to have submitted a written response, as on February 6, 2026, she received an email from CEO Muna containing a "Response to the Rebuttal." (*Id.*)

(14) Hofschneider subsequently filed a case with the Equal Employment Opportunity Commission (EEOC) on February 23, 2025. She was then interviewed by EEOC staff

before receiving a determination and notice of rights by May 13, 2026. (*Id.*)

Based on these alleged facts, Hofschneider brings a claim for "Retaliatory and Age Discrimination" against Director Nabors, Director Ngirausui, and CEO Muna, all employees of CHCC. (*See also* Compl. 2 (listing the three individual defendants).) Hofschneider asserts that

> I believe I was retaliated against because I told the staff that I supervised, [ISN], that no children were allowed in the front office, a practice that Director Keith King-Nabors had allowed for months before I came onboard. In addition, during the three months of employment, Director King-Nabors never gave me the guidance and support I needed and sought I believe because of my age. He never brought me in to inform me that I was underperforming and included allegations on my performance ratings that he never brought to my attention. We met on several occasions for matters I brought to his attention but [he] never once told me that I was underperforming.

(ECF No. 2-1, at 1.) As to relief sought, Hofschneider writes:

> I am seeking compensation for lost wages and for loss of continued employment that caused financial hardship. I am also seeking compensation for the emotional distress and other health issues caused by this injustice. I also ask that CHCC's policy reflect protection for employees on probation and all grievances be addressed before a staff member is released.

(*Id.* at 3.)

## III. LEGAL STANDARD

As Hofschneider is proceeding without prepayment of costs or fees, the Court is "require[d]" to screen her Complaint, *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000), and ascertain whether it is "frivolous or malicious," "fails to state a claim upon which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief," 28 U.S.C. § 1915(e)(2)(B)(i)-(iii). As to failure to state a claim, a complaint survives dismissal "only if, taking all well-pleaded factual allegations as true, it contains enough facts to 'state a claim to relief that is plausible on its face.'" *Hebbe v. Pliler*, 627 F.3d 338, 341-42 (9th Cir. 2010) (quoting

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) (noting 28 U.S.C. § 1915(e)(2)(B)(ii)'s "failure to state a claim" language "parallels the language of Federal Rule of Civil Procedure 12(b)(6)" and applying standard of review for Fed. R. Civ. P. 12(b)(6) dismissals to dismissal under 28 U.S.C. § 1915(e)(2)(B)(ii)). A claim is "plausible on its face" where there is sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[D]etailed factual allegations" are not required; however, a plaintiff must plead "more than an unadorned, the defendant-unlawfully-harmed me accusation." *Id.* (rejecting "formulaic recitation of the elements of a cause of action" or "naked assertions devoid of further factual enhancement" (internal quotation marks and brackets omitted)).

Hofschneider is proceeding *pro se*; therefore, her Complaint "must be held to less stringent standards than formal pleadings drafted by lawyers[.]" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Furthermore, as Hofschneider raises a civil rights claim, the Court has an obligation "to construe the pleadings liberally and to afford [her] the benefit of any doubt." *Hebbe*, 627 F.3d at 342 (quoting *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)). The Court, however, will not "accept any unreasonable inferences or assume the truth of legal conclusions cast in the form of factual allegations," *Ileto v. Glock Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003), and "may not supply essential elements of the claim that were not initially pled," *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

## IV. DISCUSSION

### A. The Court construes Hofschneider's Complaint as asserting two causes of action: a CNMI-law claim for wrongful termination and a federal law claim under the Age Discrimination Act of 1967, as amended.

As a starting matter, because Hofschneider does not organize her Complaint by counts or cite specific legal authority for her claims, the Court must determine what claims are being alleged

in Hofschneider's Complaint. The opening line of Hofschneider's typed allegations states that she is filing for "Retaliatory and Age Discrimination," with the following paragraph asserting her belief that her termination was a product of (1) retaliation for instructing ISN contrary to a practice Director Nabors allowed for months and (2) Director Nabors's failure to give her "guidance and support [she] needed and sought . . . because of her age." (ECF No. 2-1, at 1.) As such, the Court construes Hofschneider's Complaint as alleging two corresponding causes of action. First, Hofschneider's retaliation allegations raise a claim under CNMI law for wrongful termination based on Defendants' breach of the duty of good faith and fair dealing, implied in all employment contracts, by "retaliating against [Hofschneider] for performing [her] obligations under the employment contract or law." RESTATEMENT OF EMP. L. § 2.07(c)(2) (AM. L. INST. 2015); 7 CMC § 3401 (providing that where Commonwealth written law and local customary law are silent, "the rules of the common law, as expressed in the restatements of the law approved by the American Law Institute[,]" provide the "rules of decision in the courts of the Commonwealth"); *Est. of Ogumoro v. Ko*, 2011 MP 11 ¶ 61 (N. Mar. I. 2011) ("7 CMC § 3401 incorporates the entire body of Restatements"). Second, Hofschneider's age discrimination allegations raise a claim under the federal Age Discrimination in Employment Act of 1967, as amended ("ADEA," codified at 29 U.S.C. §§ 621 *et seq.*).

Hofschneider's Complaint does not appear to be "frivolous or malicious." 28 U.S.C. § 1915(e)(2)(B)(i). Nor is it readily apparent that any of the Defendants would be "immune" to her claims for monetary damages.[1] *Id.* § 1915(e)(2)(B)(iii). Therefore, the Court must examine

[1] The Court notes that Hofschneider's allegations are directed against employees of CHCC—a public corporation established under CNMI law, *see* 3 CMC § 2823(a)—and appear to be based on such employees' conduct within the scope of their employment. At this juncture, the Court need not address whether Defendants are immune or the correct defendants because as explained *infra*, the Court declines to exercise jurisdiction over Hofschneider's CNMI law claim.

whether Hofschneider's Complaint "fails to state a claim upon which relief may be granted[.]" *Id.* § 1915(e)(2)(B)(ii). The Court will examine the federal ADEA claim first because the Court's "limited jurisdiction," *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994), does not extend to the CNMI-law wrongful-termination claim unless the exercise of supplemental jurisdiction is appropriate, *see* 28 U.S.C. § 1367(a). Should Hofschneider fail to state her federal claim under the ADEA, dismissal of her CNMI-law claim would be appropriate. *Id.* § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."); *United Mine Workers of Am. v. Gibbs.*, 383 U.S. 715, 726 (1966) ("[I]f the federal claims are dismissed before trial, . . . the state claims should be dismissed as well.").

**B. Hofschneider fails to state a claim under the ADEA.**

Congress enacted the ADEA to, *inter alia*, "prohibit arbitrary age discrimination in employment[.]" 29 U.S.C. § 621(b). To that end, the ADEA makes it "unlawful" for an employer to "discharge any individual or otherwise discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's age[.]" *id.* § 623(a)(1), where the individual is "at least 40 years of age[,]" *id.* § 631(a), and authorizes "[a]ny person aggrieved" to "bring a civil action . . . for such legal or equitable relief as will effectuate the purposes" of the ADEA, *id.* § 626(c)(1); *see also id.* § 626(c)(2) (authorizing jury trials and recovery for damages regardless of whether equitable relief is sought). "When challenging an adverse employment action under the ADEA, an employee may proceed under two theories of liability: disparate treatment or disparate impact." *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1291 (9th Cir. 2000). Allegations that an "employer simply treats some people less favorably than others because [of age]" support a "disparate treatment" theory, *Enlow v. Salem-Keizer Yellow Cab Co., Inc.*, 389 F.3d 802, 811 (9th Cir. 2004) (internal quotation marks, citations,

and original brackets omitted), while allegations showing that "a facially neutral employment practice had a discriminatory impact on older workers" support a "disparate impact" theory, *Coleman*, 232 F.3d at 1291. Hofschneider's Complaint asserts that Director Nabors treated her differently and adversely based on her age. (ECF No. 2-1, at 1.) As such, Hofscheider's ADEA claim is properly construed as proceeding on a disparate treatment theory of employment discrimination.

To make out a disparate treatment claim, Hofschneider needs to allege facts that permit the Court "to draw the reasonable inference," *Iqbal*, 556 U.S. at 678, that "age was the 'but-for' cause" of her termination, *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009). *See also Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993) ("Whatever the employer's decisionmaking process, a disparate treatment claim cannot succeed unless the employee's protected trait actually played a role in that process and had a determinative influence on the outcome."). Hofschneider may rely on "direct evidence" or "circumstantial evidence" of age discrimination to make out her claim. *Sheppard v. David Evans & Assocs.*, 694 F.3d 1045, 1049 (9th Cir. 2012). A claim based on direct evidence survives dismissal where there are allegations of "evidence of conduct or statements by persons involved in the decision-making process that may be viewed as directly reflecting the alleged discriminatory attitude" that permits the inference that "the attitude was more likely than not a motivating factor in the employer's decision." *Enlow*, 389 F.3d at 812 (quoting *Walton v. McDonnell Douglas Corp.*, 167 F.3d 423, 426 (8th Cir. 1999)). A claim based on circumstantial evidence survives dismissal where allegations establish a "straightforward" claim of discrimination: that (1) Hofschneider was at least forty years old; (2) she performed her job "satisfactor[ily] or better," such as through "consistently good performance reviews"; (3) she was terminated; and (4) the circumstances of her termination give rise to an inference of age

discrimination." *Sheppard*, 694 F.3d at 1050 (internal quotation marks omitted); *see also id.* at 1050 n.2 (citing *Swierkiewicz v. Sorema N.A.*, 543 U.S. 506, 508-11 (2002), in emphasizing that "[a] plaintiff in an ADEA case is *not required* to plead a prima facie case of discrimination in order to survive a motion to dismiss").

Here, Hofschneider asserts her belief that Director Nabors "never gave [her] the guidance and support [she] needed and sought . . . because of [her] age." (ECF No. 2-1, at 1.) The factual allegations detailing the events during her employment at LCVAHC, however, do not describe any conduct, statements, or reasoning on the part of Director Nabors (or HR Director Ngirausui and CEO Muna) that "directly reflect[]" an "attitude" of treating Hofschneider differently, and ultimately seeking to terminate her, *because of her age*. *Enlow*, 389 F.2d at 812; *see also France v. Johnson*, 795 F.3d 1170, 1173 (9th Cir. 2015) (collecting cases finding direct evidence of age discrimination, including where employer varied transfer opportunities based on age, employer told new hire that they intended to replace older employees with younger hires, or employer terminated employee because employee was above the maximum age covered by the employer's insurance policy). Therefore, for Hofschneider's ADEA claim to survive dismissal, Hofschneider's allegations must contain sufficient factual material to establish a discrimination claim based on circumstantial evidence. *Sheppard*, 694 F.3d at 1050.

Hofschneider's allegations fail to do so. Hofschneider's allegations permit the Court to infer that she was at least forty years old at the time she was terminated. (ECF No. 2-1, at 1 (alleging Hofschneider has up to thirty years of continuous employment history prior to instant termination and obtained associate's degree in 1987, nine years before starting first period of employment at the then-Tinian Health Center).) In addition, Hofschneider's allegations suggest that she performed her duties in a satisfactory manner, as indicated by her "never" being "rated

poorly" throughout her over twenty years of employment at CHCC (*id.* at 3); a positive comment from CFO Santos concerning increased collections at LCVAHC, a matter falling within Hofschneider's responsibilities (*id.* at 2); and lack of any indication from Director Nabors about any underperformance prior to his negative evaluation of her, the first in her career (*id.* at 1-2). Hofschneider's allegations also establish that she was terminated within three weeks after Director Nabors's negative evaluation. (*Id.* at 3.) But Hofschneider's allegations fall short of showing that the circumstances of her termination suggest an inference of age discrimination. The allegations describe workplace conflict arising from her instructions to her subordinates that appear to contradict past practice under Director Nabors, a subsequent incident with a subordinate where Hofschneider did not have relevant information concerning the subordinate's personal and maternity leave arrangements, and Defendants' non-responsiveness to Hofschneider's repeated requests to investigate bullying by the same subordinate before terminating Hofschneider based on Director Nabors's across-the-board negative performance review. There is no factual allegation suggesting that Defendants considered, much less based their decisions on, Hofschneider's age in their treatment and ultimate decision to fire her. *See, e.g.*, *France*, 795 F.3d at 1173 (supervisor's "repeated retirement discussions" with employee was "circumstantial evidence showing [supervisor's] bias in his decisionmaking process," while supervisor's remark about "his preference for 'young, dynamic agents'" to staff position may go beyond "a stray remark"); *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 919 (9th Cir. 1996) (ambivalent, ambiguous comments not directly tied to termination were insufficient to establish inference of age discrimination); *Schnidrig v. Columbia Mach., Inc.*, 80 F.3d 1406, 1411 (9th Cir. 1996) (employee seeking promotion was told on three separate occasions that employer "wanted somebody younger for the job"). Nor is there any suggestion that that CHCC and LCVAHC "had a continuing need for [her]

skills and services in that [her] various duties were still being performed" after her termination or otherwise treated younger workers "more favorably." *Coleman*, 232 F.3d at 1281 (internal quotation marks omitted); *see, e.g.*, *Sheppard*, 694 F.3d at 1050 (inference of age discrimination present where plaintiff was over forty, was consistently rated positively across performance reviews, but "was nevertheless terminated from employment while younger workers in the same position kept their jobs"). Hofschneider's allegations thus fail to establish that her age "actually played a role in [her termination] and had a determinative influence on the outcome" as required for an ADEA claim. *Hazen Paper Co.*, 507 U.S. at 610.

At bottom, as pleaded in her Complaint, Hofschneider's assertion that Defendants discriminated against her based on her age is "an unadorned, the-defendant-unlawfully-harmed-me accusation," suggesting "the mere possibility of misconduct," that is insufficient to state a claim. *Iqbal*, 556 U.S. at 678-69. As such, the Court is required to dismiss her ADEA claim. 28 U.S.C. § 1915(e)(2)(B)(ii).

**C. Dismissal of Hofschneider's CNMI-law wrongful termination claim is appropriate.**

As noted *supra*, Hofschneider's wrongful termination claim is based on CNMI law, not federal law. The Court lacks original jurisdiction over such a claim because neither the requirements for federal question jurisdiction nor diversity jurisdiction are met. *See Yokeno v. Mafnas*, 973 F.2d 803, 808 (9th Cir. 1992) (holding no federal question exists where "[r]esolution . . . turns . . . not on an interpretation of federal law, but rather on an interpretation of the CNMI common law . . . ."); 28 U.S.C. § 1332(a)(1), (e) (diversity jurisdiction requires amount in controversy to exceed $75,000 *and* parties to be "citizens of different States [or territories]"). However, the Court has the power to exercise supplemental jurisdiction to hear "all other claims that are so related to claims" within the Court's original jurisdiction if the claims "form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

Hofschneider's wrongful termination claim, as alleged, arises from the same facts giving rise to her ADEA claim. As such, the Court can exercise supplemental jurisdiction to hear the CNMI-law claim. *Gibbs*, 383 U.S. at 725 ("The state and federal claims must derive from a common nucleus of operative fact.").

Whether the Court *should* exercise supplemental jurisdiction, however, is a question of discretion. *See* 28 U.S.C. § 1367(c) ("The district courts *may* decline to exercise supplemental jurisdiction . . . ." (emphasis added)); *Gibbs*, 383 U.S. at 726 ("That power need not be exercised in every case in which it is found to exist. It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right."). Here, the Court declines to consider and screen Hofschneider's wrongful termination claim because dismissal of Hofschneider's ADEA claim—the only claim over which the Court has original jurisdiction—is appropriate. 28 U.S.C. § 1367(c)(3); *Gibbs*, 383 U.S. at 726; *see also INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) ("As a general rule courts . . . are not required to make findings on issues the decision of which is unnecessary to the results they reach."). As such, the Court dismisses Hofschneider's CNMI-law wrongful termination claim without prejudice.

**D. The Court grants Hofschneider leave to amend her Complaint.**

"[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez*, 203 F.3d at 1130 (internal quotation marks omitted). Here, it appears that Hofschneider would be able to cure the defects in her Complaint, as identified in this order, by alleging further facts to make out her ADEA claim. Therefore, the Court must permit Hofschneider the opportunity to do so. *See also id.* at 1131 ("[T]he rule favoring liberality in amendments to pleadings is particularly important for the pro se litigant. Presumably unskilled in the law, the pro

se litigant is far more prone to making errors in pleading than the person who benefits from the representation of counsel." (internal quotation marks omitted)).

## V. CONCLUSION

Based on the foregoing, the Court finds that (1) Hofschneider's ADEA claim for retaliation and age discrimination must be dismissed for failure to state a claim; (2) the exercise of supplemental jurisdiction over Hofschneider's wrongful termination claim is inappropriate; but (3) the defects in Hofschneider's ADEA claim appear to be curable through additional allegations of fact. Accordingly,

(1) Plaintiff Alice U. Hofschneider's Application (ECF No. 1) is GRANTED.

(2) Plaintiff Alice U. Hofschneider's Complaint (ECF Nos. 2 & 2-1) is DISMISSED WITHOUT PREJUDICE but WITH LEAVE TO AMEND, to wit:

  a. Hofschneider's ADEA claim is DISMISSED WITH LEAVE TO AMEND; and

  b. Hofschneider's CNMI-law wrongful termination claim is DISMISSED WITH LEAVE TO AMEND.

(3) Insofar as Hofschneider may wish to file a first amended complaint, Hofschneider must file any **first amended complaint** and attachments by **<u>November 30, 2026</u>**. The first amended complaint <u>must</u> independently contain sufficient facts regarding Hofschneider's ADEA claim, including allegations describing the specific conduct of each defendant that allow for the Court to discern how each defendant discriminated, or participated in discriminating, against her, and address the defects identified in this order. Hofschneider may also include additional facts bearing on her CNMI-law wrongful termination claim.

(4) Hofschneider is notified that **<u>failure to comply with the terms of this order may result in dismissal with prejudice of this matter</u>**.

IT IS SO ORDERED this 30th day of October, 2026.

RAMONA V. MANGLONA
Chief Judge